## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 09-02569-TLM |
| R. WOOLSEY ) | |
| & ASSOCIATES, INC. ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| R. WOOLSEY ) | |
| & ASSOCIATES, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 10-06048-TLM |
| ) | |
| JEREMY J. GUGINO, Trustee ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### MEMORANDUM OF DECISION
_____

**INTRODUCTION**

After reopening its chapter 7[1] case, R. Woolsey & Associates, Inc. ("Debtor") commenced this adversary proceeding against its chapter 7 Trustee, Jeremy J. Gugino ("Trustee"). Debtor asserts Trustee breached his duties when he

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Code"), and all rule references are to the Federal Rules of Bankruptcy Procedure 1001–9037.

MEMORANDUM OF DECISION - 1

endorsed and delivered a $43,142.10 check to Debtor's secured creditor, Idaho Banking Company ("IBC"), that Debtor had drawn on Syringa Bank and had made payable to Trustee (the "Syringa Check"). Debtor contends Trustee should have instead held those funds as property of the estate and delivered them to Debtor as abandoned property at the close of the bankruptcy case, and that Trustee should be held personally liable for failing to so return the check or the funds represented thereby to Debtor.

This matter was tried before the Court on January 26, 2011, and taken under advisement. The following constitutes the Court's findings of fact and conclusions of law. *See* Fed. R. Bankr. P. 7052.[2]

**FACTS**

On August 25, 2009, Debtor filed a voluntary chapter 7 petition. Prior to filing, Debtor operated a company that published a real estate advertising magazine, "Homes and Land." Debtor had a lending relationship, as well as a banking relationship, with IBC. IBC was allegedly owed, at the time Debtor filed bankruptcy, approximately $930,000 on two notes.[3] The notes were secured by

---

[2] The facts are established by testimony heard and exhibits admitted at trial, and from the parties' stipulation of facts, Adv. Doc. No. 19. In addition, upon request of Trustee and without opposition from Debtor, the Court took judicial notice of the record in the underlying chapter 7 case, Case No. 09-02569-TLM. Fed. R. Evid. 201.

[3] The $930,000 figure appears in Debtor's schedules. However, IBC's § 362(d) stay relief motion alleged an $838,431.91 claim as of September 8, 2009. *See* Case No. 09-02569-
(continued...)

MEMORANDUM OF DECISION - 2

accounts, accounts receivable, the proceeds of the same, and other collateral. The note obligations were cross-collateralized. Debtor had defaulted on the secured obligations in July, 2009. Debtor then moved its bank accounts to Syringa Bank. Pursuant to the terms of the loan documents, IBC issued letters to Debtor's account obligors requesting payments be made to IBC. Some account obligors complied. Debtor collected certain other accounts receivable which were deposited into its Syringa Bank account.

Debtor's assets, as disclosed in its schedules, consisted of $12,000 in the Syringa Bank checking account, $200,000 of accounts receivable, and $36,225 in office equipment, furnishings and supplies. Debtor listed no secured creditors, and showed IBC on schedule F as an unsecured creditor with a claim in excess of $930,000, noting that it believed IBC had perfected in the wrong jurisdiction.[4]

---

[3](...continued)
TLM at Doc. No. 11. The difference is immaterial; IBC was substantially undersecured in any event.

[4] Debtor was incorporated in 1987 under Washington state law. It relocated operations to Idaho in 2003, and filed annual reports in Idaho commencing in 2004. IBC's notes in January, 2008 and March, 2009, were secured by two January, 2008 security agreements. Perfection was through a UCC-1 financing statement filed with the Washington Secretary of State on January 22, 2008. Perfection, under these circumstances, would appear to have been proper in Washington. *See* Wash. Rev. Code § 62A.9A-301(1); *see also* Idaho Code § 28-9-301(1) and Official Comment 4 thereto (providing that where a debtor is located establishes the law governing perfection); Wash. Rev. Code § 62A.9A-307(e); Idaho Code § 28-9-307(e) ("A registered organization that is organized under the law of a state is located in that state.") and Official Comment 4 thereto (providing that under subsection (e), a corporation organized under the laws of a State is located in the State of organization). Debtor's apparent additional argument about perfection of security interests in deposit accounts, *see*, *e.g.*, Idaho Code § 28-9-304(a), appears misplaced as the interests here were in accounts receivable and the proceeds thereof, rather than
(continued...)

MEMORANDUM OF DECISION - 3

On September 11, 2009, soon after filing, a representative of the Debtor provided Trustee with 54 checks from Debtor's account obligors, all made payable to Debtor or to "Homes and Land."[5] Trustee was also provided one other check – the Syringa Check. It was a cashier's check for $43,142.10 made payable to Trustee. Debtor closed its bank account at Syringa Bank in order to deliver those funds to Trustee. The funds in the Syringa Bank account, according to Debtor's CEO, Roland Woolsey, came from collected accounts receivable. The ongoing collection of those accounts apparently explains why the amount of the check was larger than the $12,000 asserted balance of the checking account in Debtor's August schedules.

IBC recognized that it was stayed by § 362(a) from proceeding with realization on its collateral until relief from stay was obtained. IBC and Trustee were also aware that Debtor had disputed the effectiveness of IBC's perfection of its security interest. IBC filed a motion for relief from stay on September 8, 2009, and amended that motion on September 10. IBC's motions expressly alleged it was properly secured *and* perfected.[6]

---

[4] (...continued)
in a deposit account *per se*. Ex. 208.

[5] These 54 checks, bearing late August or early September dates, totaled $36,220.37.

[6] Trustee's research confirmed to his satisfaction that IBC's position regarding perfection was correct, and Debtor's flawed. Trustee so advised Debtor. Ex. 206 (September 2,
(continued...)

MEMORANDUM OF DECISION - 4

Pending resolution of IBC's § 362(d) motion, Trustee entered into an informal and unwritten agreement with IBC under which IBC would be provided all the checks to hold "in trust" until a stay relief order was entered. Trustee believed IBC would deposit the funds represented by the checks into some sort of account, hold or freeze that account until a § 362 stay relief order was entered and then "offset" those funds against Debtor's debt.

Debtor was not made aware of this "agreement." Trustee's September 2, 2009 e-mail, Ex. 206, stated:

> The principal of the Debtor contacted me earlier this week and I, as a matter of routine trustee procedure, told him to close out the Syringa bank account and send the proceeds to me. Please disregard that instruction. I think it would be easier for everyone if the Debtor forwarded all bank account proceeds to Idaho Banking to be held in trust until an order is entered granting stay relief.

As it turns out, Trustee's instruction to deliver the checks to IBC was not followed; Debtor instead delivered them to Trustee on September 11. Trustee did not further communicate with Debtor about his decision to give the checks to IBC to be held "in trust" pending stay relief.

Since Trustee concluded Debtor's challenges to perfection of IBC's secured claim lacked merit, he did not oppose stay relief. Ultimately, neither did the

---

[6] (...continued)
2009 email). It should be noted that arguable lack of perfection would relate to Trustee's ability to seek to avoid IBC's security interest. *See*, *e.g.*, § 544. However, existence or absence of perfection would not impact the effectiveness or enforceability of the security agreement as between IBC and Debtor.

MEMORANDUM OF DECISION - 5

Document      Page 6 of 18


Debtor. A stay relief order was entered without opposition on October 9, 2009.[7]

Three weeks prior to entry of that stay relief order, Trustee effectuated his informal agreement by delivering the 54 checks to IBC. On September 14, 2009, IBC deposited the checks into an account where the funds were held pending stay relief. Trustee also endorsed "pay to the order of Idaho Banking Co." on the $43,142.10 Syringa Check, and delivered it to IBC. It was similarly deposited by IBC. Ex. 210.

On October 12, 2009, Trustee filed a Report of No Distribution (commonly known as a "no-asset report") which resulted, on the next day, in entry of a Court order approving the report and closing the estate.

At Debtor's request, Debtor's attorney e-mailed the Trustee a post-closing inquiry as to the whereabouts and disposition of the Syringa Check. Trustee responded that he delivered all checks, including the Syringa Check, to IBC. In a January 12, 2010 letter to the Trustee, Debtor's attorney demanded return of the Syringa Check. When that demand was not satisfied, Debtor followed up with this adversary proceeding.

---

[7] On the day before that order was entered, October 8, 2009, Debtor amended its Schedule B to disclose a "potential cause of action" against IBC "for fraud and breach of contract" with an estimated value of $1,500,000 though noting it was still "being evaluated for liability and amount of damages." No dispute with the effectiveness or enforceability of the security agreement was there alleged and, as noted, Debtor never objected to IBC's stay relief motion.

MEMORANDUM OF DECISION - 6

**DISCUSSION AND DISPOSITION**

These relatively straight-forward facts raise several challenging issues regarding trustee liability. It is perhaps easiest to start by identifying what the case is *not* about.

First, this case does not concern the 54 checks totaling $36,220.37 that were made payable to Debtor or to "Homes and Land" and delivered by Trustee to IBC. Debtor has limited and circumscribed its contentions, focusing solely on the $43,142.10 Syringa Check, and seeking a personal judgment against Trustee for that amount. *See*, *e.g.*, Adv. Doc. No. 1 at ¶¶ 5, 9, 10 and prayer ("Complaint"). Later briefing and representations at trial confirmed this position.

Second, this is not a situation where Debtor is asserting claims against Trustee's bond. *See generally* § 322.[8] "The purpose of the bond is to assure faithful performance by the trustee and to indemnify the estate for any loss that might be sustained as a result of the misfeasance or malfeasance of the trustee. When a trustee negligently performs the trustee's duties, liability under the bond [issued in favor of the United States under § 322(a)] is activated." *See* 3 Collier on Bankruptcy ¶ 322.02[2] at 322-4 (Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2010) (hereafter "Collier"). However, Federal Rule of Bankruptcy

---

[8] Section 322(a) provides that a person selected to serve as a trustee must qualify, before beginning official duties, by filing with the court "a bond in favor of the United States conditioned on the faithful performance of such official duties."

MEMORANDUM OF DECISION - 7

Procedure 2010(b) requires that an adversary proceeding on the trustee's bond be brought in the name of the United States for the use and benefit of the entity injured by the alleged breach of duty. This sort of relief and required course of action was not pursued by Debtor.

Third, this is not a situation where Trustee effected a disposition of property under the authority of § 725. That section provides:

> **§ 725. Disposition of certain property.**
>
> After the commencement of a case under this chapter, but before final distribution of property of the estate under section 726 of this title, the trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title.

The language is plain and unambiguous: a disposition under § 725 requires and can occur only "after notice and a hearing." Trustee did not take that approach here.[9]

---

[9] That Trustee did not put the matter before the Court on notice and hearing nor seek an order of the Court approving his approach to the handling of the checks relates to more than § 725. In connection with the issue of immunity, discussed further below, the Ninth Circuit's recent case of *Harris v. Wittman (In re Harris)*, 590 F.3d 730 (9th Cir. 2009), instructs how immunity may be obtained:

> For derived quasi-judicial immunity to apply, the [trustee] must satisfy the following four elements: (1) their acts were within the scope of their authority; (2) the debtor had notice of their proposed acts; (3) they candidly disclosed their proposed acts to the bankruptcy court; and (4) the bankruptcy court approved their acts.

The Circuit concluded that "[b]ankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority *and pursuant to court order*." *Id.* at 742 (emphasis added) (quoting *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989)). That is not the case

(continued...)

MEMORANDUM OF DECISION - 8

The issues that are presented flow from Trustee's decision to deliver property of the estate to a secured creditor, without notice, hearing or order, under the circumstances described.

The Court starts with some basic propositions. The funds Debtor had in its deposit accounts were property of the estate. *See* § 541(a). A trustee is responsible for all property of the estate. § 704(a)(1), (2).[10] "The trustee must, of course, be accountable for all property received, as required by section 704(a)(2), and is liable for failure to perform his or her duties satisfactorily." 6 Collier ¶ 704.01 at 704-5; *accord In re Abraham*, 163 B.R. 772, 779 (Bankr. W.D. Tex. 1994) ("There is one trustee 'duty' that can never be delegated, and for which the trustee must *always* be held accountable[.] . . . The trustee and only the trustee is ultimately responsible for the administration of the estate, including most significantly the safeguarding and responsible disposition of estate assets and their

---

[9](...continued)
here. Other aspects of immunity will be addressed *infra*.

[10] This Section provides:

(a) The trustee shall –
    (1) collect and reduce to money the property of the estate for which such trustee services, and close such estate as expeditiously as is compatible with the best interests of parties in interest;
    (2) be accountable for all property received[.]

This command is echoed in the Chapter 7 Trustee's Handbook: "The trustee has the duty and responsibility to insure and safeguard all estate property that comes into the trustee's hands by virtue of his appointment." *Id.* at p. 6-3. (Handbook is accessible through the U.S. Trustee at www.justice.gov/ust/eo/private_trustee/library/chapter07/docs/ch7_handbook/ch7_handbook_2011.pdf).

MEMORANDUM OF DECISION - 9

distribution to creditors.").

Debtor alleges that, given Trustee's conduct, he violated those duties and is personally liable to it for $43,142.10 and costs of suit. How and under what circumstances a bankruptcy trustee may be held personally liable is a complicated and abstruse area.

### A. Trustee liability and immunity[11]

The Bankruptcy Code identifies a chapter 7 trustee's duties in § 704, but is effectively silent as to that trustee's standard of care.[12] And there is no express provision of the Code addressing the question of a trustee's personal liability, leaving that matter to be addressed through case law.[13] Unfortunately, that case law is not particularly clear.[14]

The court in *In re Continental Coin Corp.*, 380 B.R. 1 (Bankr. C.D. Cal.

---

[11] Debtor initially argues that because Trustee failed to raise the defense of immunity in his first responsive pleading (*i.e.*, his answer, Adv. Doc. No. 5) and raised it only in briefing (*see* Adv. Doc. No. 10 at 11), Trustee waived any right to rely on the defense. While there are credible arguments on both sides of this point, the Court concludes that – because Debtor itself raised the question of immunity in its Complaint, *see* Adv. Doc. No. 1 at 3 ¶ 11 (alleging Trustee's act "was not a negligent act, but was rather a willful act for which he is not granted immunity" and further stating "Debtor specifically alleges that the Trustee does not have immunity for the actions alleged.") – it is properly before the Court notwithstanding Trustee's unexplained failure to mention the defense in his Answer.

[12] *But see* § 322(a) (speaking to a trustee's "faithful performance" of duties).

[13] *See* National Bankruptcy Review Commission Final Report, *Bankruptcy: The Next Twenty Years* § 3.3.2 at 859 (1997) (noting the absence of a Code standard, and that court decisions since 1978 reached contrary conclusions) (hereafter "NBRC Final Report").

[14] *See generally* 6 Collier ¶ 704.04 at 704-12.

MEMORANDUM OF DECISION - 10

2007), *aff'd* 2009 WL 2589635 (C.D. Cal. Aug. 21, 2009), completed a thorough analysis of the various authorities on trustee liability. This Court will not attempt to restate or paraphrase the analysis in *Continental Coin*; doing so would unreasonably, and unnecessarily, lengthen this Decision. Instead, it is sufficient here to merely summarize several of that court's conclusions and holdings, and consider their application to the case at bar.

*Continental Coin* concludes that a bankruptcy trustee qualifies for immunity for at least certain adjudicative acts. 380 B.R. at 8-11 (following *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), and *Curry v. Castillo (In re Castillo)*, 297 F.3d 940 (9th Cir. 2002)). Based on an analysis of the historical underpinnings of immunity, and a focus on the nature of the trustee as actor and on the adjudicative nature of the subject acts, the court made a finding of immunity for actions which are adjudicatory in nature, but the court also stated:

> However, the case law in the Ninth Circuit and many other circuits does not release a trustee from personal liability if her actions are a breach of the duty of loyalty (such as self-dealing) or are due to gross negligence or a deliberate or willful breach of her duty of care.

380 B.R. at 11.

The court's analysis in *Continental Coin* started, as do most, with the Supreme Court's decision in *Mosser v. Darrow*, 341 U.S. 267 (1951). In *Mosser*, the Court considered whether to hold a reorganization trustee personally liable for

MEMORANDUM OF DECISION - 11

permitting "employees to profit from trading in securities of the debtors' subsidiaries." *Mosser*, 341 U.S. at 268. The Supreme Court recognized the difficulties and responsibilities associated with a trustee's duties, stating:

> Trustees are often obliged to make difficult business judgments, and the best that disinterested judgment can accomplish with foresight may be open to serious criticism by obstreperous creditors aided by hindsight. Courts are quite likely to protect trustees against heavy liabilities for disinterested mistakes in business judgment. But a trusteeship is serious business and is not to be undertaken lightly or so discharged. The most effective sanction for good administration is personal liability for consequences of forbidden acts[.]

*Id.* at 273-74. Ultimately, the Supreme Court held that a trustee would be personally liable for damages to the estate if the trustee deliberately sets up an "interest . . . adverse to that of the trust." 341 U.S. at 272. Thus, *Continental Coin* concluded that, under the "really . . . very narrow holding" of *Mosser,* a trustee is personally liable for "willful and deliberate" acts in violation of his fiduciary duties. 380 B.R. at 12-13.

The Ninth Circuit addressed trustee liability in *Castillo,* which concerned whether a Chapter 13 bankruptcy trustee was personally liable for miscalendaring a plan confirmation hearing and for failing to give the debtor notice of the hearing. Before deciding whether the trustee was liable, the Ninth Circuit first considered whether the trustee was entitled to immunity, recognizing that "a trustee in bankruptcy . . . is entitled to derived judicial immunity because he is performing

MEMORANDUM OF DECISION - 12

an integral part of the judicial process." *Castillo*, 297 F.3d at 946 (citing *Lonneker Farms, Inc. v. Klobucher,* 804 F.2d 1096, 1097 (9th Cir.1986)).[15]

In *Castillo*, the Ninth Circuit concluded that "quasi-judicial immunity attaches to only those functions essential to the authoritative adjudication of private rights to the bankruptcy estate." *Id.* (citing *Antoine,* 508 U.S. at 433). It determined that both scheduling and providing notice of confirmation hearings were discretionary acts that were part of the judicial function, and the trustee was therefore immune from liability. Further, *Castillo* made it clear that trustees are not liable for negligent acts when immunity applies: "Because we decide that [the trustee] is entitled to immunity, we need not reach Castillo's argument that bankruptcy trustees may be liable for negligence." *Id.* at 953.[16]

---

[15] Case law variously (and not always consistently, even within the same opinions) identifies the concept as qualified immunity, quasi-judicial immunity, and derived judicial immunity, among other characterizations. The modifiers appear more indicative of historical origins than they are of substantive limitations. *Continental Coin* expressly indicated that it used the terms interchangeably. 380 B.R. at 6 n.8.

[16] Prior to *Castillo*, the Ninth Circuit in *Hall v. Perry (In re Cochise College Park, Inc.)* 703 F.2d 1339, 1357 (9th Cir.1983), held that a trustee "is subject to personal liability for not only intentional but also negligent violations of duties imposed upon him by law." In reaching this decision, the Ninth Circuit expressly rejected the approach of other circuits limiting a trustee's liability to intentional, as opposed to negligent, conduct. The Circuit concluded that "*Mosser* does not 'hold' in any sense that personal liability does not obtain if such a showing of negligence is made." As *Continental Coin* noted:

> I do not understand the fine distinction made that allows the Ninth Circuit to rule that a trustee is entitled to quasi-judicial immunity for negligence (*Castillo*) and yet can be subject to personal liability for negligence (*Cochise*). Obviously, if the trustee is entitled to immunity for negligent actions, she is not subject to liability for negligence.

(continued...)

MEMORANDUM OF DECISION - 13

As *Continental Coin* concluded under these several precedents, "the law of the Ninth Circuit excuses a trustee from simple or ordinary negligence, but does not protect him from actions that are deemed to be gross negligence or for acts of intentional wrongdoing." 380 B.R. at 15.

Thus, in the instant case, the questions presented are whether Trustee's actions of delegating his responsibilities to hold property of the estate and transferring such property to nondebtor parties are subject to quasi-judicial immunity, and whether such actions constituted a willful or intentional violation of his duties or gross negligence.

However, the Court concludes that – even if immunity is found to be unavailable, either because the Trustee's actions fall outside the adjudicative functions entitled to immunity or because his acts were grossly negligent or amounted to willful or intentional misconduct – there is a defect in Debtor's action that forecloses its recovery on the Complaint.[17]

---

[16] (...continued)

*Id.* at 14-15. *Continental Coin* concluded that the facts in *Cochise College Park*, when closely analyzed, suggested that the Ninth Circuit "seemed to focus on something more than simple negligence" even though it announced a more broadly worded standard. It determined that, "while *Cochise* may no longer be used to subject a trustee to personal liability for simple negligence, it still stands for the proposition that a trustee can be liable for acts of gross negligence as well as those that are willful and intentional." 380 B.R. at 15.

[17] For this reason, the Court need not, and will decline to, render a ruling on the existence or applicability of immunity to the subject conduct. For the same reason, the Court need not determine, and will decline to render a ruling, whether the actions taken should be

(continued...)

MEMORANDUM OF DECISION - 14

**B.    Damages**

A cause of action for damages due to Trustee's allegedly willful or grossly negligent conduct requires more than proof of the acts taken and the absence of immunity or other affirmative defense.  A plaintiff, like Debtor here, must also prove that it was damaged and to what extent.  *See, e.g.*, *Distefano v. Stern (In re J.F.D. Enters., Inc.)*, 223 B.R. 610, 631 (Bankr. D. Mass. 1998) (recognizing that an absence of evidence that the plaintiffs were personally harmed or the estate harmed was fatal to their cause, and stating, *inter alia*, that even if the respective defendants breached their duties, summary judgment would be rendered for the defendants on the basis that the plaintiffs "failed to demonstrate a genuine issue of material fact tying any such breach to the losses which they or the estate suffered").

The idea that a plaintiff must demonstrate it suffered damages in order to recover on a money claim against a defendant is a basic legal concept.  It is also one that this Court has recognized in several contexts.  *See, e.g., Netwest Communications Group, Inc. v. Mills (In re Mills)*, 08.3 I.B.C.R. 109, 116, 2008 WL 2787252, at *9 (Bankr. D. Idaho 2008) (noting that inadequate proof of damages in § 523(a)(4) nondischargeability action foreclosed recovery); *In re*

---

[17](...continued)
characterized as manifesting willful misconduct or grossly negligent conduct or, alternatively, simple negligence.

MEMORANDUM OF DECISION - 15

*Kinsey*, 349 B.R. 48, 52 (Bankr. D. Idaho 2006) (concluding that in an action to recover for violation of stay, debtor must prove damages suffered as a consequence of the creditor's actions); *Wiggins v. Peachtree Settlement Funding (In re Wiggins)*, 273 B.R. 839, 880, 02.1 I.B.C.R. 26, 43 (Bankr. D. Idaho 2001) (finding that plaintiffs failed to meet their burden of proving compensatory damages and, absent same, court could not speculate as to amount) (citing *Crosby v. Rowand Machinery Co.*, 729 P.2d 414, 418 (Idaho Ct. App. 1986) and *Martsch v. Nelson*, 705 P.2d 1050 (Idaho Ct. App. 1985)); *accord Cole v. Esquibel*, 182 P.3d 709, 711 (Idaho 2008) (concluding that the award of economic damages must be based on proof, not speculation or conjecture).

In order to recover the claimed $43,142.10 in damages, Debtor must do more than show that Trustee breached his fiduciary duties, even assuming Trustee's affirmative defense of immunity does not apply. It must prove its injury and the amount of damages necessary to compensate Debtor for that injury.

As earlier noted, even if an arguable issue existed as to perfection, the security agreement was and remained effective as between Debtor and IBC. Under that agreement, IBC was entitled to accounts receivable and the proceeds of accounts receivable as collateral securing its claim. The testimony established that the Syringa Bank account was Debtor's business account into which receivables were deposited when collected. IBC was, on the evidence and under Debtor's

MEMORANDUM OF DECISION - 16

schedules, substantially undersecured. That it had a right, superior to Debtor's, in those funds is established on the evidence presented.

Had the funds represented by the Syringa Check been held by Trustee in his trust account, and then abandoned under § 554(c) at the close of the case, Debtor's resulting possession would be subject to the claims of IBC in the collateral and proceeds of collateral.[18] Debtor did not establish that it would have realized anything more than bare and temporary possession and, importantly, never established it would have realized the value or benefit of the $43,142.10 represented by the Syringa Check.

Ultimately, Debtor failed to establish damages, even if Trustee's liability for his acts in this case is assumed. Damage is an essential component of the cause of action pleaded and tried here. Without preponderating evidence that it has suffered any harm from the Trustee's conduct, Debtor cannot recover.

## CONCLUSION

For the foregoing reasons, and on the evidence presented, this Court finds and concludes that Debtor has failed to prove damages, even assuming the absence of immunity and an actionable breach of Trustee's duties. Judgment will be

---

[18] That possession would have been obtained is somewhat speculative. Though generally abandonment restores the property to the party in possession at the time of the filing of the petition for relief (often, and here, the debtor), it remains subject to the secured claims encumbering it. To prevent conversion or dissipation of its collateral, IBC might have sought to prevent delivery of possession by, for example and as Trustee argues, making demand on Trustee. Under those circumstances, an interpleader or other approach might have been used.

MEMORANDUM OF DECISION - 17

entered for Trustee.

DATED: March 30, 2011



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 18